Jean **ETTINGER**, on behalf of herself
and all others similarly
situated, Plaintiff,

v.

**MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC.,** Defendant.

Civ. A. No. 84–3925.

United States District Court,
E.D. Pennsylvania.

July 26, 1988.

David H. Weinstein, David C. Harrison, Philadelphia, Pa., for plaintiff.

C. Clark Hodgson, Jr., Lawrence C. Norford, Philadelphia, Pa., Roger J. Hawke, Scott T. Tross, New York City, for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Plaintiff moves for class certification, pursuant to rules 23(a) and (b) of the Federal Rules of Civil Procedure, of "all individuals who are or have been retail customers or clients of defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) who have purchased zero-coupon bonds from or through defendant Merrill Lynch." [1]

---

**1.** Because of different applicable statutes of limitation, plaintiff seeks certification of three subclasses: Subclass I, for the federal securities claim in count I of plaintiff's complaint, consisting of all class members who made such a purchase on or after August 14, 1983; Subclass II, for breach of contract, consisting of all class members who made such a purchase on or after August 14, 1980; and Subclass III, for breach of common law duty, consisting of all class members who made such a purchase on or after August 14, 1978.

The zero-coupon bonds at issue are Treasury Investment Growth Receipts, a proprietary product of Merrill Lynch. In May and June of 1984, Ettinger purchased from Merrill Lynch several of these bonds which Merrill Lynch refers to as TIGR's. After selling her TIGR's back to Merrill Lynch at a profit several months later, Ettinger filed suit alleging that Merrill Lynch had taken too large a bite by charging excessive and unconscionable mark-ups [2] when it sold her the TIGR's and had failed to disclose its mark-ups in violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1984).[3] Ettinger also asserts breaches by Merrill Lynch of its contractual and common law duties under Pennsylvania law.

In order to have the proposed class certified, plaintiff must prove compliance with the requirements of rule 23(a) which provides:

(a) *Prerequisites to a Class Action*

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiff must then establish that the action falls within one of the three categories of rule 23(b). The plaintiff in this case seeks certification initially under rule 23(b)(2) but argues, alternatively, that the requirements of rules 23(b)(1) and (b)(3) have also been met.

**2.** Plaintiff contends that the difference between the bid-price, the retail price at which Merrill Lynch would buy TIGR's, and the ask-price, the retail price at which Merrill Lynch would sell the bonds to customers, was unconscionable and therefore that her profit was unconscionably low.

**3.** It goes without saying, I suppose, that Merrill Lynch not only failed to disclose its mark-up to plaintiff, but failed to tell her it was not telling

■ The burden is on the party seeking class certification to satisfy the requirements of rule 23(a) and (b). *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir.1974); *Gavron v. Blinder Robinson & Co.*, 115 F.R.D. 318, 321 (E.D.Pa.1987). In deciding a certification motion, a court can consider only whether the requirements of rule 23 are met, not the merits of plaintiff's case. *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). Securities actions are particularly suitable for class action treatment and any doubts should be resolved in favor of allowing a class action. *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.), *cert. denied sub nom. Wasserstrom v. Eisenberg*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed. 2d 290 (1985).

*Rule 23(a) Requirements*

1. *Numerosity*

The members of the proposed class, TIGR-buyers from Merrill Lynch, are so numerous that their joinder is impracticable, a fact which Merrill Lynch does not contest.

2. *Commonality*

■ Rule 23(a)(2) requires the existence of questions of law or fact common to the class. *See, e.g., Peil v. Speiser*, 97 F.R.D. 657, 659 (E.D.Pa.1983), *aff'd on other grounds*, 806 F.2d 1154 (3d Cir.1986). Merrill Lynch denies that there are common questions of law or fact in this case sufficient to satisfy the requirements of rule 23(a)(2).

Merrill Lynch contends that the issue whether there was an unconscionable mark-up in a particular transaction is not a common question of fact which applies to the class. Despite defendant's argument, I

her. Thus, plaintiff not only did not know what Merrill Lynch's profit was, but she also did not know that she did not know. Only time will tell whether if she had been told she was not being told, she would have foregone the chance to buy TIGR's (and as it turned out, cage a profit) in favor of a venture where, if she was not being provided with facts she considered essential, she would have been told she was not being told.

find that this case presents an overwhelming common factual and legal inquiry: whether the potential bid and ask spread on the TIGR's established by Merrill Lynch as a market maker[4] in the bonds was disclosed in the TIGR offering circular to each purchaser and whether if, in failing to disclose such a spread (and in failing to disclose that it was failing to disclose), Merrill Lynch violated section 10(b) and rule 10b–5. Plaintiff alleges that Merrill Lynch made a uniform statement in its offering circular to the effect that it intended to maintain the markets for TIGR's and that it expected that a public trading market for TIGR's would develop upon completion of each offering. Plaintiff further alleges that no disclosure was made in the offering circular to the effect that Merrill Lynch would charge for this service an amount that at times was equal to 11 percent of the bond's value. Thus, according to plaintiff, this case is one concerning a uniform omission of a potentially material fact in the TIGR offering statement. It presents common questions as to the fact of the alleged nondisclosure of the bid-ask spread and Merrill Lynch's liability for such nondisclosure. *See, e.g., Peil v. National Semiconductor Corp.,* 86 F.R.D. 357, 368 (E.D.Pa. 1980). Further, the question whether Merrill Lynch's mark-ups on the bonds were unconscionable after failing to disclose these amounts is also a question common to all members of the class. Plaintiff's claims of nondisclosure, nondisclosure of nondisclosure, and the charging of excessive mark-ups are, thus, claims shared in common with all members of the proposed class. *See Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir.1988).

Merrill Lynch contends, though, that whether the bid-ask spread on the TIGR's was disclosed is a factual inquiry which must be made of each individual purchaser. The failure to disclose the possible mark-up which might be charged by Merrill Lynch on the TIGR's, however, is alleged to have been made in the TIGR offering circular, a standardized omission common to each purchaser of the bonds. Merrill Lynch can, of course, attempt to show as a defense that information was given to certain class plaintiffs in some manner other than in the offering circular, for example, that they learned it through the grapevine. However, to allow a defendant who allegedly has made material omissions in an offering circular to defeat a motion for class certification by arguing that certain other representations have been made to individual plaintiffs would render the class certification device useless any time a class of plaintiffs charges a defendant with a material omission in a uniform document.

### 3. *Typicality*

■ The typicality requirement of rule 23(a)(3) assures that the claims presented by the class representative are consistent with those presented by the entire class. *Green v. USX Corp.,* 843 F.2d 1511, 1533 (3d Cir.1988). Merrill Lynch argues that plaintiff's claims are atypical of the class because she never participated in any investment decisions with regard to the purchase and sale of the TIGR's and delegated all control over her account with Merrill Lynch to her husband to whom she gave her power of attorney.

For purposes of rule 23(a)(3), "typical" does not mean "identical". *Eisenberg,* 766 F.2d at 786. Not every TIGR must have the same stripes; not every hunter must walk the same path. Rather, the inquiry is whether "the named plaintiff's individual circumstances are markedly different or … the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Hassine,* 846 F.2d at 177 (quoting *Weiss v. York Hospital,* 745 F.2d 786, 809 n. 36 (3d Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985)). Using this analysis, plaintiff's

---

**4.** A market maker is defined as a dealer "who, with respect to a security, holds himself out … as being willing to buy and sell such security for his own account on a regular or continuous basis." 15 U.S.C. § 78c(a)(38) (1982); *Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 835 F.2d 1031, 1032 n. 2 (3d Cir.1987).

claim is typical to those of the other class members. Plaintiff asserts that Merrill Lynch engaged in conduct violative of the federal securities laws in the manner in which it marketed its zero-coupon bonds to her. Plaintiff's claims and those of the class arise from the same conduct of defendant and are based on the same legal theory: federal securities law was violated by Merrill Lynch's failure to disclose in its offering circular the bid-ask spread in the sale of TIGR's and by the charging of unconscionable mark-ups on these bonds. *See, e.g., Zeffiro v. First Pennsylvania Banking and Trust Co.*, 96 F.R.D. 567, 569 (E.D.Pa.1983).

The individual circumstances of the decision by plaintiff's husband to purchase and sell her TIGR's, moreover, do not make plaintiff's claims against Merrill Lynch atypical of the class. The existence of factual differences between the plaintiff's claim and those of the class will not render a plaintiff's claim atypical if the claim arises from the same course of conduct that gives rise to the claims of the class members and if it is based on the same legal theory. *See In re Energy Systems Equip. Leasing Securities Litigation*, 642 F.Supp. 718, 750 (E.D.N.Y.1986); *Peil*, 86 F.R.D. at 371. *See also* 1 H.G. Newberg, *Newberg on Class Actions* § 3.15 (2d ed. 1985). The fact that plaintiff bagged her TIGR's with the assistance of her husband does not distinguish her claim against Merrill Lynch from the claims of class members whose husbands were more or less astute—or from the claims of class members who managed their own affairs. The gravamens of plaintiff's claim are the undisclosed, unconscionable mark-ups and the failure to disclose that they were undisclosed.

5. A review of plaintiff's deposition shows that, while plaintiff's husband actually purchased the TIGR's, he did so for his wife's account, with her approval and after discussing the investment with her. Plaintiff stated that she had read the complaint in this case and that she had "probably" read the TIGR offering statement. Plaintiff's deposition further states that, after discussing the matter with her husband, she felt

#### 4. *Adequate Representation*

The inquiry that a court should make regarding the adequacy of representation requisite of rule 23(a)(4) is to determine that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously (that she is willing to take the TIGR by the tail, as it were), that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class. *Hassine*, 846 F.2d at 179.

Merrill Lynch does not argue that plaintiff's interests are antagonistic to the class or that her counsel is unqualified to lead the safari. Rather, Merrill Lynch asserts that, because plaintiff's husband managed her account with Merrill Lynch, plaintiff is ignorant of the fundamental facts surrounding her claims and is, thus, an inadequate representative. Merrill Lynch also contends that plaintiff is unable to finance the cost of providing notice of the action to a nationwide class.

This court has previously rejected the suggestion that a would-be class representative need be a sophisticated investor versed in securities law. *See, e.g., Fickinger v. C.I. Planning Corp.*, 103 F.R.D. 529, 533 n. 5 (E.D.Pa.1984). While a complete lack of personal knowledge as to the litigation he is supposedly maintaining on behalf of the class may render a plaintiff inadequate as a representative in certain circumstances, *see In re Energy Systems Equip. Leasing Securities Litig.*, 642 F.Supp. 718, 751 (E.D.N.Y.1986), the burden is on the defendant to prove such inadequacy. *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). In this case, defendant has failed to support its allegations that plaintiff is completely unfamiliar with the facts of her claims [5] or that she is unable to

she was "overcharged" by Merrill Lynch on the purchase of the TIGR's.

In any event, Merrill Lynch's objections as to the knowledge of plaintiff with regard to the transactions at issue extend beyond the appropriate inquiry for class certification and more into the merits of this litigation. *See, e.g., Priest v. Zayre Corp.*, 118 F.R.D. 552, 554 (D.Mass. 1988).

finance the costs of notice to the class.[6] Merely because plaintiff may have relied on her husband's advice regarding her investments with Merrill Lynch and, therefore, lacks knowledge as to the particulars of those investments does not render her inadequate given the fact that she has retained adequate counsel to represent her. *See, e.g., Lewis*, 671 F.2d at 789. As there has been no showing that plaintiff does not have the ability or interest to represent the claims of the class rigorously, I find her to be an adequate representative. *See Hassine*, 846 F.2d at 179.

*Rule 23(b)(3) Requirements*

■ Plaintiff contends that certification of this action would be proper under rule 23(b)(2). Since I find that the appropriate relief sought in this case would primarily be money damages, the action does not qualify for certification under subsection (b)(2). I will, however, certify the action under rule 23(b)(3) because the requirements of that subsection have been met.

1. *Predominance of Common Questions*

■ As previously discussed with regard to rule 23(a)(2), common questions as to the disclosure by Merrill Lynch of the bid-ask spread on the TIGR's in its offering circular and the alleged charging by Merrill Lynch of unconscionable mark-ups on the bonds predominate over any questions affecting only individual members. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). In this case, each member of the class will base his claim on the same alleged omissions by Merrill Lynch in the TIGR offering statement and on the charging by Merrill Lynch of excessive mark-ups. Merrill Lynch's potential liability for failing to disclose, failing to disclose its failure to disclose, and obtaining the excessive mark-ups is common to the entire class. While the court may have to take aim at the individual amounts charged each class member for the purposes of damage calculations, such a determination should not preclude class certification when common issues which determine liability predominate. *Bogosian*, 561 F.2d at 456.

2. *Superiority of Class Action*

A class action is a superior way to proceed with this expedition since joinder of all class members would be impracticable and individual trials would result in unwarranted duplication. Moreover, class action is appropriate where, as here, a large number of investors may have been harmed and they might not bother to bring suit because their individual damages are not great and their fear of the litigation-jungle is. *Gruber v. Price Waterhouse*, 117 F.R.D. 75, 80 (E.D.Pa.1987).

*Pendent Claims*

■ Merrill Lynch also opposes certification of the state law claims for breach of contract and breach of common law duty on the basis that the nature of any legal duties Merrill Lynch may owe a customer varies depending upon the facts and circumstances in each case and the customer's relationship to Merrill Lynch. Therefore, under rule 23(a)(2), Merrill Lynch argues that uncommon questions of fact are presented. Merrill Lynch further contends that the state law claims of the class members will be subject to the law of each plaintiff's domicile state, thereby presenting uncommon questions of law to the case.

Despite Merrill Lynch's arguments to the contrary, I find that it is appropriate to extend the class certification to the state claims for breach of contract and breach of common law duty. These claims concern factual allegations common to the entire class: that the terms of Merrill Lynch's contractual relationship with TIGR buyers obliged it not to charge unconscionable mark-ups and to disclose the amount of mark-up on the TIGR's, that in failing to

---

**6.** At her deposition, plaintiff said that she was aware that there were certain costs she might have to bear as a plaintiff in a class action suit, although she had no idea what the amount of these costs might be.

Should plaintiff, at a later date, prove to be unable to sustain the cost of notice to the class, defendant can certainly move for decertification of the class action.

disclose the mark-up it was charging and in charging unconscionable amounts on the bonds, Merrill Lynch breached its contract with purchasers and breached a common law duty it owed to them with respect to the purchase and sale of the TIGR's. *See, e.g., In re New York City Shoes Securities Litigation*, Fed.Sec.L.Rep. (CCH) ¶ 93,670 (E.D.Pa.1988) [available on WESTLAW, 1988 WL 17843] (proof of material misrepresentation with regard to state law claims of fraud, deceit, and negligent misrepresentation is common to all class members). While certain aspects of Merrill Lynch's contracts with individual purchasers may vary,[7] the allegation that the charging of undisclosed, unconscionable mark-ups is a breach of contract predominates over any individual differences, if any, which may exist among the contracts Merrill Lynch entered into with its client. *See, e.g., Gruber*, 117 F.R.D. at 81 (question of defendant's liability is common to the entire class and predominates over individual questions of reliance). Moreover, the common law duty which the class alleges was breached was a duty on Merrill Lynch's part to disclose the mark-ups on the TIGR's. Thus, Merrill Lynch's assertion that there are no common questions of fact because different clients may have had different relationships with Merrill Lynch is without merit since the duty to disclose is one allegedly owed to all purchasers in common as a result of Merrill Lynch's position as seller of the TIGR's.

I note, further, that the possible applicability of the laws of different states should not, in and of itself, immediately bar certification of plaintiff's state law claims. *See, e.g., Dekro v. Stern Bros. & Co.*, 540 F.Supp. 406 (W.D.Mo.1982) (declining to deny certification simply because state laws may differ). *See also Gruber*, 117 F.R.D. at 82 (concluding that, under a choice-of-law analysis, the law of the forum

governs the common law claims of the entire class). Merrill Lynch argues that "the law governing each purported class member's contract or fiduciary duty claims depends upon the state in which he transacted business with Merrill Lynch." Applying Pennsylvania choice of law rules, *see Gruber*, 117 F.R.D. at 82, it may well be that Pennsylvania has a sufficient interest in protecting its residents such as plaintiff who brought her TIGR's in Pennsylvania and in controlling the conduct of businesses such as Merill Lynch which operate in Pennsylvania so as to warrant application of Pennsylvania law exclusively to this case. Further, if, as plaintiff alleges, an investor's account agreement with Merrill Lynch was subject to approval by Merrill Lynch's New York offices, the application of New York law may be warranted. In any event, there has been no demonstration by Merrill Lynch that the common law of breach of contract or breach of duty differs significantly from state to state, thereby presenting a true "conflict of laws" in this case. *See Margaret Hull Foundation, Inc. v. Atlantic Financial Management, Inc.*, Fed.Sec.L.Rep. (CCH) ¶ 93,359 (D.Mass.1987) [1987 WL 15884] (in opposing certification of state law claims, defendant has burden of demonstrating that law of different states would apply and that variations in state law are significant); *but see Priest*, 118 F.R.D. at 558 (denying certification of state law claims where plaintiff failed to prove that law of different states would not apply or would not vary significantly). I will, therefore, grant plaintiff's motion for class action certification of her pendent state law claims.[8]

*Time Period*

Plaintiff initially moved for certification of the class for the federal securities claim

---

7. Given the fact that the TIGR offering circular formed the basis of the agreement to sell which Merrill Lynch had with its clients, the sale of TIGR's by Merrill Lynch was undoubtedly accomplished with more or less standardized procedures applicable to all purchasers, with the terms of each purchaser's agreement to buy the same.

8. While I conclude that defendant's conflict of laws argument is insufficient to bar class action certification of plaintiff's state law claims, I will withhold a decision as to which state's law should apply to these claims so as to allow the parties to brief more extensively, should they choose to do so, the conflicts of law issue.

consisting of all class members who purchased TIGR's on or after August 14, 1983. This date corresponds with the filing date of plaintiff's complaint on August 14, 1984. Given the Third Circuit's decision in *In re Data Access Sys. Sec. Litig.*, 843 F.2d 1537 (3d Cir.1988) (in banc) holding that the proper period of limitations for a complaint charging violation of section 10(b) and Rule 10b–5 is one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation, I will permit the parties to submit an additional memorandum addressing the question of a suitable class period. *See also Hill v. Equitable Trust Co.*, 851 F.2d 691 (3d Cir.1988).

One final point: When the hunt is all over and the last TIGR question laid to rest, plaintiff's attorneys will want to be paid a conscionable amount for their services. Accordingly, I am scheduling a pre-trial conference so I may discuss with counsel a possible percentage fee arrangement, a nonjudicial representative to negotiate a fee arrangement for the putative fund beneficiaries, hourly rates, the keeping and submission of time sheets, the number of hours counsel anticipates devoting to the chase, a litigation budget, and similar concerns. *See Court Awarded Attorney Fees*, 108 F.R.D. 237 (1985). In addition, I will discuss with counsel a proposed pretrial schedule, the mechanics of giving notice to possible class members, discovery plans, further conferences, and a suggested date for trial. Obviously, counsel should reach agreement on these matters in advance insofar as they are able to do so. Plaintiff may attend this conference and may express her views.

An appropriate order follows.

### ORDER

AND NOW, this 26th day of July, 1988, in accordance with the accompanying memorandum, it is hereby ordered:

Plaintiff Jean Ettinger's motion for class certification is granted. Counts I, II, and III of plaintiff's complaint shall be maintained as a class action pursuant to rules 23(a) and (b)(3) of the Federal Rules of Civil

Procedure. Final determination of the class and subclasses is continued until calculation of the appropriate class periods.

It is further ordered that, within twenty days from the date of this order, each party shall file a supplemental memorandum in support of its proposed class periods.

A pre-trial conference in this case is scheduled for Monday, August 9, 1988, at 9:00 a.m.