Sarah L. ROSEN

v.

**FIDELITY FIXED INCOME TRUST, et al.**

Civil Action No. 95–2365.

United States District Court, E.D. Pennsylvania.

Nov. 28, 1995.

**296**

Steven A. Schwartz, Michael D. Donovan, Chimicles, Jacobsen & Tikellis, Haverford, PA, for Plaintiff.

M. Norman Goldberger, Mark A. Alderman, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, PA, James S. Dittmar, David A. Martland, Hutchins, Wheeler and Dittmar, Boston, MA, for Defendants.

### MEMORANDUM

PADOVA, District Judge.

Plaintiff, Sarah L. Rosen, brings this securities class action alleging that Defendants, Fidelity Fixed Income Trust, Fidelity Management & Research Company, Fidelity Distributors Corporation, and FMR Corp.,[1] made false, and misleading written statements, in violation of §§ 11, 12(2) and 15 of the Securities Act of 1933, 15 U.S.C.A. §§ 77k, 77*l*(2) & 77*o* (West 1993 & Supp. 1995) (Counts I, II, & III) and Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.Cons.Stat.Ann. §§ 201–1 to 201–9.2 (West 1993 & Supp.1995) (Count IV). Currently before the court is Plaintiff's motion for class certification pursuant to Fed.R.Civ.P. 23(a), (b)(3). For the reasons that follow, I will deny the motion in part and certify the class subject to the modifications described below.

### I. FACTUAL BACKGROUND

Plaintiff alleges the following material facts. On December 20, 1993, Plaintiff, a Pennsylvania resident, purchased 1,155 shares in the Fidelity Spartan Short–Intermediate Government Fund (the "Fund").[2] Before investing in the Fund, Plaintiff received written information about the Fund at the Fidelity Investment Center located in Philadelphia.[3] Plaintiff alleges that Defendants stressed in written materials that the Fund's goal was "high current income with preservation of capital," and that the Fund sought to achieve its goal by investing "principally in securities issued or guaranteed by the U.S. Government and its agencies while maintaining an average maturity of two to five years." Pl.'s Compl. at ¶ 2.

Plaintiff alleges that Defendants sold shares in the Fund through materially false

---

1. Each of the Defendants in this case is a Massachusetts business trust or corporation having its principal offices in Massachusetts. *See* Aff.Knox at ¶ 3. Fidelity Fixed Income Trust is an open-end investment management company, commonly known as a mutual fund. *See id.* at ¶ 7. The other Defendants are Fidelity Management & Research Company, the Fund's investment advisor; Fidelity Distributors Corporation, the Fund's underwriter and distributor; and FMR Corp., the

parent corporation of the Fidelity operating companies. *See id.* at ¶¶ 4–6.

2. Plaintiff is no longer a shareholder in the Fund. *See* Aff.Knox at ¶ 21.

3. The particular documents at issue in this case are the Prospectuses and Registration Statements dated October 16, 1992, June 21, 1993, and June 21, 1994 (the "Fidelity Documents").

and misleading statements concerning the Fund's investment goals, strategies, and risks. Although Defendants portrayed the Fund, through its name and written materials, as a conservative, low-risk investment, the Fund's portfolio was actually weighted heavily toward long-term securities, which exposed unsuspecting investors to substantial risks.[4]

Plaintiff now seeks certification of the following class pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure:

> All persons or entities who purchased shares of the Fidelity Spartan Short–Intermediate Fund pursuant to any of the Prospectuses and Registration Statements dated October 16, 1992, June 21, 1993, or June 21, 1994. Excluded from the Class are Defendants, their affiliates, their present and former officers, directors, and employees, and any trusts or entities that Defendants control.

Pl.'s Compl. at ¶ 39.

## II. STANDARD OF REVIEW

A plaintiff seeking class certification "must establish that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met." *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir.1994) (citation omitted). Rule 23(a) states:

> (a) **Prerequisite to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Rule 23(b)(3) states:

> (b) **Class Action Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

A District Court ruling on a class certification motion should set forth findings of fact and conclusions of law. *See In re General Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 794 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 88, 133

---

4. Specifically, Plaintiff alleges that after receiving the Fund's 1994 Annual Report in July 1994, she discovered that a majority of the Fund's assets were invested in *30 year Government National Mortgage Association securities ("GNMAs")*, as opposed to securities with maturities of two to five years, as suggested by the Fund's name and represented in the Fund's Prospectus. Furthermore, Plaintiff asserts that the 1994 Annual Report reflected a dollar-weighted average maturity for the Fund's *total assets* of over 14 years. In subsequent communications with Fidelity representatives, Plaintiff alleges that they admitted that the only notice or basis of the Fund's asset allocation was (1) the Fund's Statement of Additional Information; (2) the Securities and Exchange Commission ("SEC") Form N–SAR; and (3) a Salomon Brothers, Inc. Index, none of which, Plaintiff argues, fairly advised investors of the risks of investing in the Fund. Although the Fidelity Defendants subsequently explained that they could compress the Fund's dollar-weighted average maturity to fall between two and five years through use of the Salomon Brothers Index, Plaintiff asserts that use of this overly aggressive index was unreasonable and outside the industry norm. Plaintiff alleges that because important information regarding the Fund's asset allocation was not provided to investors, and because that information conflicted with the Fund's Prospectus, ordinary investors, like Plaintiff, were unaware of the substantial risks of investing in the Fund.

L.Ed.2d 45 (1995); *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 343, 88 L.Ed.2d 290 (1985).

## III. *RULE 23(a)*

### A. Numerosity

█ To satisfy the numerosity requirement, a class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a). There is no hard and fast rule as to what number of class members results in joinder being impracticable. Some courts have certified relatively small classes, deeming them impracticable for joinder, while still other courts have chosen not to certify relatively large numbers of class members. *See, e.g., Manning v. Princeton Consumer Discount Co.,* 390 F.Supp. 320 (E.D.Pa.1975) (finding group of fourteen plaintiffs impracticable for joinder); *Minersville Coal Co. v. Anthracite Export Ass'n,* 55 F.R.D. 426 (M.D.Pa.1971) (finding group of 330 plaintiffs not impracticable for joinder).

In the instant case, Plaintiff claims that the class consists of thousands of members. Defendants do not challenge Plaintiff's assertion and do not question the numerosity aspect of class certification. I therefore conclude that Plaintiff has met the numerosity requirement of Rule 23(a).

### B. Commonality

█ The commonality requirement of Rule 23(a) requires that there exist questions of law or fact common to the members of the proposed class. "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. Because the requirement may be satisfied by a single common issue, it is easily met." *Baby Neal,* 43 F.3d at 56. Commonality exists when proposed class members challenge the same conduct of the defendants. *See, e.g., Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979) (finding plaintiffs' challenge to hearing procedures of Secretary of Health, Education and Welfare meets commonality requirement).

In the instant case, Plaintiff alleges that she satisfies the commonality requirement because all of the class members challenge the dissemination of misinformation regarding the Fund contained in the Fidelity Documents.

Defendants do not take issue with the commonality element of Plaintiff's claim and the class is clearly linked by the alleged misconduct. I conclude that Plaintiff has met the commonality requirement of Rule 23(a).

### C. Typicality

█ Rule 23(a) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a). "The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of the absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal,* 43 F.3d at 57. The typicality requirement may be met despite the existence of factual distinctions between the claims of the named plaintiffs and the claims of the proposed class. *Id.* at 58; *Eisenberg,* 766 F.2d at 786. However, the Third Circuit has explained:

> The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees.
>
> Typicality entails an inquiry whether the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.

*Baby Neal,* 43 F.3d at 57–58 (citations and internal quotations omitted). For the reasons that follow, I conclude that Plaintiff's § 11 claims are typical of the putative class. However, Plaintiff's position with respect to the § 12(2) claims does not ensure that the interests of the absentee class members will

be protected. Plaintiff's § 12(2) claims are therefore atypical of the putative class.[5]

Section 11 provides a cause of action to parties acquiring a security issued pursuant to a false or misleading registration statement. 15 U.S.C.A. § 77k; *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 286 (3d Cir.), *cert. denied*, 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992). For a material misrepresentation or omission to be actionable under § 11, it must be in, or relate to, a registration statement "when such part became effective." 15 U.S.C.A. § 77k(a). The determination of whether the registration statements contained material misstatements or omissions on the dates they became effective will apply to any putative class member seeking to recover under § 11. Therefore, Plaintiff's § 11 claims are typical of the class.[6]

By contrast, the peculiar circumstances of this case render Plaintiff's § 12(2) claims atypical of the class. Plaintiff's theory of the case is that Defendants sold shares in the Fund through misrepresentations and non-disclosures concerning the Fund's goals, strategy, investment objectives and risks. Pl.'s Compl. at ¶ 1. Central to Plaintiff's argument is the contention that the Fidelity Documents misrepresented that the Fund's assets would be invested in securities with dollar weighted average maturities of two to five years when in fact the Fund's portfolio was weighted heavily toward longer term, higher risk securities. Pl.'s Compl. at ¶¶ 2–3. Proving this contention will require Plaintiff to compare the Fidelity Documents to the makeup of the Fund's portfolio to determine whether, in fact, the Fidelity Documents accurately describe the contents of the portfolio. However, the contents of the Fund's portfolio are dynamic and change from day to day. Therefore, the search for a material misrepresentation or omission as to the contents of the portfolio is time dependant, necessitating an examination of the portfolio's contents on the relevant date of inquiry.

Section 12(2) provides that a person who offers or sells securities by means of a prospectus or oral communication that misrepresents or omits material facts is liable to the person purchasing such security from him. 15 U.S.C.A. § 77l(2); *Shapiro*, 964 F.2d at 286. Unlike § 11, § 12(2) does not specify the point in time to which materiality is related. However, judicial interpretation makes the time of purchase the crucial moment for the determination of materiality. *See* 17A J. William Hicks, Civil Liabilities: Enforcement & Litigation Under the 1933 Act § 6.07[3] (1995). *See also, e.g., In re Union Carbide Class Action Sec.*, 648 F.Supp. 1322, 1327 (S.D.N.Y.1986) (finding that determination as to materiality of omission alleged in federal securities action must be made upon examination of the facts as they existed at the time of the transaction); *University Hill Foundation v. Goldman, Sachs & Co.*, 422 F.Supp. 879, 893 (S.D.N.Y. 1976) (focusing on broker-dealer's good faith belief at time of sale to purchaser). For the putative class members to recover under § 12(2), a material misrepresentation must have existed at the time of each party's purchase. Because the makeup of the Fund's portfolio is different at any given moment, and because the Defendants' intent, goals and strategy may change from time to time, each putative class member's case will require proof of facts unique to that individual.[7]

Plaintiff purchased her shares of the Fund on December 20, 1993. Her § 12(2) claims will turn on whether the prospectuses con-

---

**5.** Defendants do not challenge class certification under § 15 of the Securities Act of 1933, 15 U.S.C.A. § 77o. Section 15 makes controlling parties joint and severally liable for violations of §§ 11 or 12. Because I conclude that class certification is proper under § 11, I will also certify the class for purposes of § 15.

**6.** *Plaintiff states that she purchased her shares in the Fund pursuant to the Fund's prospectus dated June 21, 1993. Pl's Compl. at ¶ 7. It is not clear whether Plaintiff may recover for violations contained in the other registration statements.* However, the merits of this case are beyond the scope of my inquiry at the class certification stage of litigation. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). To the extent that Plaintiff may pursue her § 11 claims against each of the three registration statements, her claims are typical of class.

**7.** The claims would be the same for individuals who purchased shares contemporaneously with this Plaintiff.

tained material misrepresentations or omissions as of that date. The claims of class members who purchased shares at other times will necessarily require proof of facts irrelevant to Plaintiff's claims. Certification of the § 12(2) class would place Plaintiff in the untenable position of having to investigate the financial history of the Fund over the entire period that the Fidelity Documents were in force; the purpose of this investigation would be to determine the makeup of the Fund's portfolio and the investment strategies of the Defendants at practically every point during that three and one-half year term. This burdensome investigation, and the resultant presentation of evidence at trial, would be largely irrelevant to Plaintiff's case, suggesting that Plaintiff would have little or no incentive to pursue this line of inquiry with vigor. This fundamental non-alignment of claims places the interests of the absent class members at risk. *See Fickinger v. C.I. Planning Corp.,* 103 F.R.D. 529, 534 (E.D.Pa.1984) (finding inability of putative class representative to recover for events occurring after a certain date eliminated his incentive to press vigorously for those class members who could recover and rendered him inadequate to represent those class members); *Simon v. Westinghouse Electric Corp.,* 73 F.R.D. 480 (E.D.Pa. 1977) (finding representative did not meet typicality requirement where a portion of the class had claims requiring proof of facts irrelevant to representative's claims).

I conclude that Plaintiff's § 12(2) claims are not sufficiently typical of the putative class to protect the interests of the absent class members. I therefore decline to certify the § 12(2) class.

### D. Adequacy of Representation

■ To establish adequate representation, "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3d Cir.1992) (internal quotation and citations omitted). Defendants do not challenge the qualifications of Plaintiff's attorney. Rather, Defen-

dants argue that Plaintiff, as a former shareholder, has interests that are antagonistic to those class members that still hold shares in the Fund.

Specifically, Defendants argue that the Fund is a Defendant in this case. Therefore, a judgment for Plaintiff would be executed against the Fund and injure those class members that continue to hold shares. Plaintiff argues that the Fund itself is not a defendant. Rather, it is the Fidelity entities that manage and advise the Fund that are named as defendants.

Plaintiff has named Fidelity Fixed Income Trust (the "Trust") as a defendant. It is undisputed that the only assets held by the Trust are five separate investment portfolios, including the portfolio that makes up the corpus of the Fund. Tr., Oral Argument, Nov. 1, 1995, at 38. While a judgment against the Trust might implicate the assets of the Fund, any conflict would not materialize until the execution phase of litigation. Even then, Plaintiff may choose not to execute judgment on the Fund's portfolio, or the Defendants' other assets may be sufficient to meet any damages obligation. I will not speculate at the class certification stage of this litigation what assets may be used to satisfy a judgment that has not yet been entered. If, as litigation progresses, a conflict becomes manifest, the conflict can be addressed through decertification, subclasses or other measures.

I conclude that any potential conflict is too remote and speculative to warrant withholding class certification at this time. *See* 1 Herbert B. Newberg et al., Newberg on Class Actions § 3.25 at 3–135–36 & n. 357 (3d ed. 1992) (and cases cited therein) ("[C]onflict challenges relating to the class claims may represent … speculative conflicts that may never materialize. Many courts have held that speculative conflict should be disregarded at the class certification stage.").

### IV. *RULE 23(b)*

■ Having met the requirements of Rule 23(a) with regard to Plaintiff's §§ 11 and 15 claims, class certification is appropriate under Rule 23(b)(3) if "the court finds that the questions of law or fact common to the mem-

bers of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

Having reviewed the parties' submissions and the oral argument of counsel, I conclude that class certification is superior to other available methods for the fair and efficient adjudication of Plaintiff's § 11 claims. Joinder of all class members would be impracticable. Additionally, class certification remains a desirable method of seeking redress under the securities laws, particularly where, as here, "a large number of individuals [allegedly] have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf." *In re Regal Communications,* No. 94–179, 1995 WL 550454 at *7 (E.D.Pa. Sep. 14, 1995) (quoting *Green v. Wolf Corp.,* 406 F.2d 291, 296 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969)). The individual questions that may be raised by this litigation, such as knowledge and damages, do not predominate over the central issue in the case, namely, whether the registration statements contained material misstatements or omissions.[8]

Plaintiff has met the requirements of Rule 23 as to his § 11 claims subject to the restrictions on class membership described above.

## V.  PENDENT STATE LAW CLAIMS

▆ In addition to her federal securities claims, Plaintiff seeks class certification for pendent state claims based on Pennsylvania's Unfair Trade Practices and Consumer Protection Law. 73 Pa.Cons.Stat.Ann. §§ 201–1—201–9.2. The factual basis giving rise to Plaintiff's state law claims are substantially similar to those giving rise to her federal claims. The question currently before the court is whether it is appropriate to certify a national class for the adjudication of claims under Pennsylvania law.

A state court (or a federal court applying state law) may exercise personal jurisdiction over a nation wide class so long as it complies with the requirements of procedural due process. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 814, 105 S.Ct. 2965, 2976, 86 L.Ed.2d 628 (1985). Additionally, there can be no harm in applying a particular state's law to the entire class if that law does not conflict with the law of any other jurisdiction connected with the suit. *Id.* at 816, 105 S.Ct. at 2976. However, where laws of the various jurisdictions conflict, in order for a particular state's substantive law to be selected and applied to the class in a constitutionally permissible manner, the forum state must have "significant contact or significant aggregation of contacts, creating State interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Id.* at 818, 105 S.Ct. at 2978. In the absence of such contacts it would be necessary to apply the law of each class member's home jurisdiction. *Id.* 818–22, 105 S.Ct. at 2978–79.

The potential need to apply differing state laws does not, in itself, preclude the certification of the class. *See, e.g., Elliott v. ITT Corp.,* 150 F.R.D. 569, 579–80 (N.D.Ill.1992) (concluding that the potential application of different state laws is not, in itself, a deterrent to class certification); *In re Crazy Eddie Securities Litigation,* 135 F.R.D. 39, 41 (E.D.N.Y.1991) (holding that the application of the laws of different states, if necessary, does not preclude national class litigation of pendent state law claims); *Ettinger v. Merrill Lynch, Pierce, Fenner & Smith,* 122 F.R.D. 177, 183 (E.D.Pa.1988) (noting that the possible application of the laws of different states should not, in and of itself, immediately bar certification of plaintiff's state law claims).

---

8. Defendants also allege that Plaintiff is subject to a number of "personal idiosyncracies" that make her inappropriate as a class representative. Among these alleged idiosyncracies is Plaintiff's request to recover an additional $1,500.00 to compensate her and her husband for investiga-

tion and research conducted before the initiation of litigation, and Plaintiff's contingent fee agreement with her attorney. I conclude that these alleged idiosyncracies do not render Plaintiff unsuitable as a class representative.

However, if it is clear that Pennsylvania law will not apply, and that the application of multiple states' laws will be particularly onerous, class certification may be inappropriate. The Court of Appeals for the Third Circuit has noted:

> there will be a point at which the sheer magnitude of the task of construing the various laws will compel a court not to certify the multistate class or to reduce it to a more manageable number of states. Even short of that point, choice of law may pose major problems. The first is the danger of an unwarranted intrusion into another state's legal affairs through a mistaken application of its laws. The court should thus consider its own familiarity with the other state's law, the degree to which that law is unclear or unsettled, and the extent to which it implicates important interests of the other state.

*In re School Asbestos Litigation,* 789 F.2d 996, 1010 n. 11 (3d Cir.), *cert. denied sub nom., Celotex Corp. v. School Dist. of Lancaster,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986).

In the instant case, the parties have not provided sufficient information to conclusively resolve the choice of law issue. I cannot determine whether Pennsylvania has sufficient ties to the foreign class members to justify the application of Pennsylvania law to the entire class. Nor is it clear that the application of the differing states' laws would be unmanageable. *See In re School Asbestos Litigation,* 789 F.2d at 1011 (class certified after counsel demonstrated that laws of the fifty states could be reduced to four general patterns, thereby providing a framework for subclasses if the nationwide action proved unmanageable). Where, as here, there are common questions of federal law, differences in state law could be dealt with later in the litigation through subclasses or other means. *Elliott,* 150 F.R.D. at 579. Decertification also remains available if state law problems become too unwieldy. *Id.* I will therefore conditionally certify the class as to Plaintiff's state law claims, but I will defer ruling on the choice of law question to give the parties an opportunity to develop the issue fully. *See, e.g., Id.; In re Crazy Eddie Securities*

*Litigation,* 135 F.R.D. at 41 (declining to decide choice of law question at class certification phase of litigation); *Ettinger,* 122 F.R.D. at 183 n. 8 (declining to decide choice of law question at class certification to allow parties to brief issue more thoroughly).

## VI. CONCLUSION

I conclude that class certification is inappropriate as to Plaintiff's § 12(2) claims. Class certification will be conditionally granted regarding Plaintiff's remaining claims.

An appropriate order follows.

### ORDER

AND NOW, this 22nd day of November, 1995, upon review of Plaintiff's motion for class certification (Document No. 15) and the parties' filings in support thereof and in opposition thereto (Documents No. 21–25, 28, 29), and upon consideration of counsel's oral argument, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for class certification is DENIED as to Plaintiff's claims pursuant to § 12(2) of the Securities Act of 1933, 15 U.S.C.A. § 77$l$ (2);

2. Plaintiff's motion for class certification is conditionally GRANTED as to Plaintiff's claims pursuant §§ 11 and 15 of the Securities Act of 1933, 15 U.S.C.A. §§ 77k, 77$o$, and as to Plaintiff's claims under State law;

3. The certified class shall consist of the following:

All persons or entities who purchased shares of the Fidelity Spartan Short–Intermediate Fund pursuant to any of the Prospectuses and Registration Statements dated October 16, 1992, June 21, 1993, or June 21, 1994. Excluded from the Class are Defendants, their affiliates, their present and former officers, directors, and employees, and any trusts or entities that Defendants control.