Dale DURANT and Deborah Durant, individually and in a representative capacity, Plaintiffs,

v.

SERVICEMASTER CO. Trugreen, Inc., and Trugreen Ltd. P'ship, Defendants.

No. Civ.01–40007.

United States District Court, E.D. Michigan, Southern Division.

June 10, 2002.

See, also, 159 F.Supp.2d 977.

Stephen Wasinger, Gregory D. Hanley, Timothy O. McMahon, Wasinger, Kickham, Royal Oak, MI, for plaintiffs.

S. Thomas Wienner, Feeney, Kellett, Bloomfield Hills, MI, for defendants.

### OPINION AND ORDER

GADOLA, District Judge.

Before the Court is Plaintiffs' motion for class certification [docket entry 49]. Pursuant to Local Rule 7.1(e), the Court concludes that oral argument would not aid substantially in the disposition of this motion. For the reasons set forth below, the Court shall grant in part and deny in part Plaintiffs' motion.

### I BACKGROUND

Plaintiffs filed their second amended-complaint on April 8, 2002. Defendants are the

ServiceMaster Company, TruGreen, Incorporated, and TruGreen Limited Partnership. Defendants are corporations incorporated under the law of Delaware. Defendant ServiceMaster Company has its principal place of business in Illinois; the other two Defendants have their principal places of business in Tennessee.

During the relevant time period, Defendants collaborated with one another to provide lawn-care services to roughly 3.5 million customers. Plaintiffs allege that Defendants unlawfully added a "fuel surcharge" of one dollar to customers' invoices beginning "no later than July 11, 2000" and continuing "through at least December 2000." (SAC[1] at ¶ 13). Plaintiffs allege that Defendants effected this scheme by listing a one-dollar "fuel surcharge" on invoices that they sent to customers from July 11, 2000 through October 26, 2000. After October 26, 2000, Plaintiffs allege, Defendants listed a one-dollar "voluntary fuel surcharge" on the invoices. In all the relevant invoices, Plaintiffs allege, the extra one dollar was added in the "price" and "total" line items of the invoice. In every instance, allege Plaintiffs, Defendants were "effectively asking customers to make a 'gift' but [were] doing so in such a way which create[d] the impression that customers [were] obligated to make the payment." (SAC at ¶ 16.) That is to say, Plaintiffs allege that Defendants deliberately misled their customers into paying money that those consumers did not owe to Defendants. Plaintiffs allege that Defendants committed this act several million times. (SAC at ¶ 19.)

The named Plaintiffs allege that they specifically contracted with Defendants for lawn care. The named Plaintiffs allege that Defendants added the "fuel surcharge" to their invoices, thereby tricking the named Plaintiffs into paying more than they were legally obligated to pay. (SAC at ¶¶ 21–27.)

Plaintiffs are Michigan residents and customers of Defendants. They assert the following claims against Defendants: (1) breach of contract; (2) violation of the Michigan Consumer Protection Act ("the MCPA"); (3) violation of the Tennessee Consumer Protec-

---

1. "SAC" refers to Plaintiffs' second amended    complaint.

tion Act ("the TCPA"); and (4) unjust enrichment.

Plaintiffs ground their breach of contract theory in the following contentions. Plaintiffs maintain that Defendants set the price terms of their contracts with customers through two types of standardized correspondence. New customers would receive "welcome letters," and existing customers would receive "prepay letters." Plaintiffs argue that these two types of letters were basically identical in all relevant respects during 2000, containing set prices for uniform services. Plaintiffs' position is that Defendants violated the contracts created by this standardized correspondence when, upon sending invoices to customers, they demanded a higher price term than that to which the contracting parties had agreed.

Plaintiffs argue that they are entitled to recover under Michigan's and Tennessee's consumer-protection statutes, and under a common-law theory of unjust enrichment, essentially because Defendants misled customers into paying money that those customers did not owe, and that it would be unjust for Defendants to benefit from such fraudulent activity.

Plaintiffs now seek class certification.

## II LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs certification and maintenance of class actions. Rule 23 provides, in relevant part:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members if impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class ...

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

(c)(1) As soon as practicable after the commencement of an action brought as a class action the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits ....

This Court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *Garrish v. UAW,* 149 F.Supp.2d 326, 330 (E.D.Mich. 2001) (Gadola, J.). Within the framework of Rule 23, this Court "has broad discretion in deciding whether to certify a class." *Id.* The party seeking class certification bears the burden of proof. *Id.* Although this Court may, in its discretion, look beyond the bare pleadings in the case, it may not examine the merits of the parties' claims or defenses. *Id.*

To make a proper determination with respect to Plaintiffs' motion for class certification, this Court must address three distinct issues:

a. The adequacy of the class definition proposed by the plaintiffs;

b. The four prerequisites to certification provided in Fed.R.Civ.P. 23(a) (that is, numerosity, commonality, typicality and adequacy of representation); and

c. The specific subcategories provided in Fed.R.Civ.P. 23(b).

The Court will address each of these issues in turn.

## III ANALYSIS

### a. The Adequacy of Plaintiffs' Proposed Class Definition

"[T]he class definition must be sufficiently definite so that it is administratively feasible for the [C]ourt to determine whether a particular individual is a member of the proposed class." *Garrish,* 149 F.Supp.2d at 330–31. Precisely defining the class "allows the Court to determine who would be entitled to relief, who would be bound by a judgment, and who is entitled to notice of the action." *Id.* at 331.

Plaintiffs propose to define the class as "all TruGreen customers who paid the Surcharge and excluding TruGreen, its officers, directors and employees, and their family members." (Pl.Br. at 12.)[2] Membership in the putative class is readily ascertainable by reference to objective criteria. Therefore, the Court holds that Plaintiffs have defined adequately the class.

### b. Rule 23(a)

#### i. Numerosity

■ The numerosity requirement exists where common sense dictates that the class is large. *Little Caesar Enterprises, Inc. v. Smith,* 172 F.R.D. 236, 241 (E.D.Mich.1997) (Gadola, J.). Here, common sense indicates that the class is large, and the Court holds that Plaintiffs satisfy numerosity.

#### ii. Commonality

■ "Commonality exists when there is a common issue among the plaintiffs and the resolution of that issue would advance the litigation." *Garrish,* 149 F.Supp.2d at 331. A common question is one that "arises from 'a common nucleus of operative facts.'" *Ro-*

*sario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992). Commonality exists here because a common issue for all Plaintiffs would be whether Defendants violated their contracts with consumers when they imposed a surcharge of one dollar.

#### iii. Typicality

■ Typicality exists where the class representatives present "issues common to the class," and the representatives' position on those issues is not antagonistic to the putative class members. *Little Caesar,* 172 F.R.D. at 242. The class representatives' interests "should be generally coextensive with" those of the putative class members. *Id.* "Typicality may exist where there is a very strong similarity of legal theories, even if substantial factual distinctions exist" among the named and unnamed members of the class. *Id.* at 243.

In this case, the named Plaintiffs present issues common to the class. These issues include, *inter alia,* whether Defendants sent invoices to consumers, and those invoices misled Plaintiffs and the putative class into paying more than they were obligated to pay. The Court also apprehends that no antagonism exists between the named Plaintiffs' positions on this, or any other, legal issue at bar and the legal posture of putative class members. The Court therefore holds that typicality exists.

#### iv. Fairness and Adequacy of Representation

■ This inquiry exists to uncover conflicts of interest between named parties and the putative class. *Garrish,* 149 F.Supp.2d at 332. For class certification to be appropriate, named plaintiffs must "fairly and adequately protect the interests of the" putative class. Fed.R.Civ.P. 23(a)(4). Named plaintiffs satisfy Rule 23(a)(4) when: (1) they have common interests with the unnamed members of the putative class; (2) they would

---

2. Plaintiffs also assert in their brief that, if the Court were to grant their motion for leave to file a second amended-complaint, they would "seek certification of a national class on the consumer protection claims"; if not, Plaintiffs would "seek a Michigan subclass on the consumer protection act claims." (Pl.Br. at 3.) The Court granted Plaintiffs' motion for leave to file a second amended-complaint and therefore concludes that Plaintiffs seek only to certify the nationwide class delineated above.

prosecute vigorously the class's interests through qualified counsel; and (3) there is an absence of a conflict of interest between the named plaintiffs and putative class members. *Garrish,* 149 F.Supp.2d at 332.

For reasons discussed above, it is clear that Plaintiffs have common interests with the unnamed members of the putative class. Based on the high quality of advocacy that Plaintiffs' attorneys have demonstrated to this point, the Court is equally satisfied that the named Plaintiffs would prosecute vigorously the class's interests through qualified counsel. The Court also apprehends no conflict of interest between the named Plaintiffs and putative class members. The Court therefore holds that Plaintiffs have satisfied Rule 23(a)(4).

### c. Rule 23(b)

■ Having shown that they satisfy the strictures of Rule 23(a), Plaintiffs must now establish that they pass muster under one of the subsections of Rule 23(b). Plaintiffs argue that they satisfy Rule 23(b)(3). Rule 23(b)(3) applies where

> the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

Under Rule 23(b)(3), in short, the Court must determine "whether common questions of law or fact predominate over individual ones and whether the proposed class action is superior to other available methods of adjudication." *In re Cardizem CD Antitrust Litig.,* 200 F.R.D. 297, 307 (E.D.Mich.2001) (Edmunds, J.). Pursuant to Rule 23(c)(4)(A), the Court

may, *sua sponte,* conclude that a particular claim, or several particular claims, satisfy Rule 23(b)(3), and certify the class only as to that claim or those claims. *See Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 167–68 (2d Cir.2001); 7B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1790 (2d ed. 1986 & Supp.2001).

A claim meets the predominance requirement when generalized evidence exists that would prove, or disprove, "an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position. Common questions need only predominate: they need not be dispositive of the litigation. The predominance requirement would be satisfied unless it were clear that individual issues would overwhelm the common questions and render the class action valueless." *In re Cardizem,* 200 F.R.D. at 297 (internal quotations omitted).

A claim meets the superiority requirement where "joinder of all class members would be impracticable and individual trials would result in unwarranted duplication." *Ettinger v. Merrill Lynch, Pierce, Fenner & Smith,* 122 F.R.D. 177, 183 (E.D.Pa.1988). Superiority is particularly likely to exist where "the individual damage claims are so small that denial of class certification would effectively eliminate the litigation." *Gasperoni v. Metabolife, Int'l Inc.,* No. 00–71255, 2000 WL 33365948, at *8 (E.D.Mich. Sept.27, 2000) (Cohn, J.).

The Court now considers, *seriatim,* whether predominance and superiority exist for each of Plaintiffs' claims.

Regarding the claim for breach of contract, Plaintiffs argue that they satisfy the predominance requirement because they "allege uniform breaches of standardized contracts." (Pl.Br. at 17.) Plaintiffs cite numerous cases in which courts have concluded that an allegation of the breach of a standardized contract meets the predominance requirement and is appropriate for nationwide class certification. *See, e.g., Cobb v. Monarch Finance Corp.,* 913 F.Supp. 1164, 1170 (N.D.Ill.1995); *Kleiner v. First Nat'l Bank of Atlanta,* 97

F.R.D. 683, 691 (N.D.Ga.1983). *See generally Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 671–72 (S.D.Fla.1997).

Defendants respond that this case does not turn on the interpretation of a form contract, but instead requires "[a]n individual examination [of] each putative class member's claim [ ] to determine which documents, if any, would form the basis for their [sic] individual contract claims" and a determination of "whether those documents, or any oral communications, satisfy the fundamental offer, acceptance, and consideration requirements" of a contract. (Def.Br. at 13–14.) Defendants argue that the existence of a contract will hinge on different documents for different members of the putative class. For some Plaintiffs, the existence of a contract will depend on interpretation of Defendants' "welcome letter." For other Plaintiffs, the existence of a contract will turn on interpretation of the "prepay letter" that Defendants sent to some, but not all, members of the putative class. Defendants further contend that some putative class members might identify still other documents as constituting the agreement between themselves and Defendants.

The Court rejects Defendants' argument and holds that Plaintiffs' claim for breach of contract satisfies the predominance requirement. For reasons discussed above, although certain aspects of Defendants' contracts with customers may have varied, the assertion that the addition of a one-dollar surcharge to customers' invoices was a breach of contract is common to all members of the putative class and predominates over any individual differences that may exist among the contracts. *See Ettinger*, 122 F.R.D. at 183 (reasoning that "the allegation that the charging of undisclosed, unconscionable mark-ups is a breach of contract predominates over any individual differences, if any, which may exist among the contracts"); *cf. Gasperoni*, 2000 WL 33365948, at *6 (reasoning that predominance existed where "all the plaintiffs allege a common method of misrepresentation"). That is to say, Plaintiffs have satisfied the predominance requirement as to the claim for breach of contract because the essence of the breach of contract claim, for each Plaintiff, would be whether the surcharge that Defendants allegedly added to customers' invoices constituted a breach.

The Court now addresses the question of whether Plaintiffs' claim for breach of contract meets the superiority requirement. Because joinder of all putative class members (who number in the millions) would be impracticable, and because the individual damages that each putative plaintiff is asserted to have suffered are so small that denial of class certification would effectively preclude the litigation, the Court holds that Plaintiffs' claim for breach of contract satisfies the superiority requirement. Plaintiffs, in short, have proven that their claim for breach of contract satisfies the requirements of Rule 23. The Court therefore shall certify the class as to that cause of action.

The Court turns to Plaintiffs' cause of action under the TCPA. Defendants argue, and the Court agrees, that a class action would not be a superior means of litigating this cause of action because Plaintiffs may only bring an action "individually," and not as members of a class, under the TCPA. T.C.A. § 47–18–109(a)(1); *see also Chaffin v. Norwegian Cruise Line Ltd.*, No. 02A01–9803–CH–00080, 1999 WL 188295, at *2 n. 1 (Tenn.Ct.App. Apr.7, 1999) (noting in dicta that the text of the TCPA only "authorizes persons to 'bring an action *individually*'") (emphasis in original). Therefore, the Court will not certify the class as to Plaintiffs' claim under the TCPA.

Regarding the MCPA, the Court observes that the "Michigan legislature has limited class actions under the MCPA to suits brought by persons 'residing or injured in' Michigan." *Highsmith v. Chrysler Credit Corp.*, 150 B.R. 997, 1007 (N.D.Ill.1993), *aff'd in part, rev'd in part*, 18 F.3d 434 (7th Cir.1994). Plaintiffs, as discussed above, seek to certify a national class, most of whose members reside outside of, and were not harmed in, Michigan. The Court therefore concludes that a class action would not be a superior means of litigating the MCPA claim and declines to certify the class as to that cause of action.

The Court turns to Plaintiffs' fourth and final cause of action, unjust enrichment. In their brief, Plaintiffs have failed to address whether their claim for unjust enrichment satisfies Rule 23(b). Plaintiffs have therefore abandoned this issue. *See Enertech Elec., Inc. v. Mahoning County Comm'rs,* 85 F.3d 257, 261 (6th Cir.1996); *Jackson v. Moscicki,* No. 99 Civ. 2427, 2000 WL 511642, at *5 n. 2 (S.D.N.Y. Apr.27, 2000) (concluding that a party abandoned an argument that he left out of his amended memorandum). The Court also notes that, for reasons enunciated in *Lilly v. Ford Motor Co.,* No. 00 C 7372, 2002 WL 507126, at *2 (N.D.Ill. Apr.3, 2002), unjust enrichment claims are rarely susceptible to nationwide class certification.

## IV CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for class certification [docket entry 49] is **GRANTED** as to Plaintiffs' claim for breach of contract and **DENIED** in all other respects.

**SO ORDERED.**